UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
                  :

DAVE SHEREK and ROBERT H. SPIEGEL,  :   Civil Action No. 17-cv-1965
derivatively on behalf of RESOURCE      :
CAPITAL CORP.,                   :
                  :   **VERIFIED SHAREHOLDER**
        Plaintiffs,        :   **DERIVATIVE COMPLAINT**
                  :
   vs.                  :
                  :
STEVEN J. KESSLER; DAVID J. BRYANT;  :   DEMAND FOR JURY TRIAL
ELDRON C. BLACKWELL; DAVID E.      :
BLOOM; WALTER T. BEACH; EDWARD E. :
COHEN; JONATHAN Z. COHEN;       :
RICHARD L. FORE; WILLIAM B. HART;   :
GARY ICKOWICZ; MURRAY S. LEVIN;   :
P. SHERRILL NEFF; and STEPHANIE H.   :
WIGGINS,                 :
                  :
        Defendants,       :
                  :
   -and-               :
                  :
RESOURCE CAPITAL CORP., a Maryland  :
corporation,              :
                  :
        Nominal Defendant.   :
                  :
——————————————————— x

By and through their undersigned counsel, Plaintiffs Dave Sherek and Robert H. Spiegel ("Plaintiffs") bring this shareholder derivative action on behalf of Nominal  Defendant Resource Capital Corp. ("Resource Capital" or the "Company") against certain current and former officers and directors of the Company for issuing false and misleading proxy statements in violation of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), breaches of fiduciary duties, unjust enrichment, and corporate waste.  Plaintiffs make these allegations upon personal knowledge as to those allegations concerning themselves and, as to all other matters, upon the investigation of counsel, which includes without limitation: (a) review and analysis of public filings made by Resource Capital and other related parties with the SEC; (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, and postings on Resource Capital's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with and publicly available from the related pending securities fraud class action, *Levin v. Resource Capital Corp., et al.*, Case No. 1:15-cv-07081-LLS (S.D.N.Y.) (the "Securities Class Action"); and (e) review of other publicly available information concerning Resource Capital and the Individual Defendants (defined below).

## NATURE AND SUMMARY OF THE ACTION

1.      Resource Capital is a diversified real estate finance company organized as a real estate investment trust ("REIT").  The Company invests in commercial and residential real estate-related assets and commercial finance assets, including debt and equity investments, with a focus on holding and managing commercial mortgage loans and related investments.

2.      Resource Capital's investments include mezzanine loans, which the Company's 2015 Form 10-K filed with the SEC (the "2015 Form 10-K") describes as loans "that are senior to the borrower's equity in, and subordinate to a first mortgage loan on, a property."  Mezzanine loans are "secured by pledges of ownership interests, in whole or in part, in entities that directly own the real property."

3.      The Company's investments include a $41.1 million ownership interest in a mezzanine loan (the "Mezzanine Loan"), purchased in 2007 and backed by a portfolio of luxury hotels, including three hotels in Puerto Rico.  Despite worsening economic and credit conditions in Puerto Rico, and despite the fact that the Mezzanine Loan was restructured in September 2012 to stop paying interest, the Individual Defendants failed to disclose the risks of the Mezzanine Loan to investors, and caused the Company to issue false and misleading statements describing the Mezzanine Loan as "current" or "performing."

4.      Since at least October 31, 2012, and continuing through the present (the "Relevant Period"), the Individual Defendants made and caused the Company to make false and misleading statements concerning the Company's business model, financial prospects, and operational and compliance policies, including failing to disclose: (i) risks related to the Mezzanine Loan, including the Company's increasing exposure to Puerto Rico's ongoing economic decline; (ii) the true quality and performance of the Company's loans; (iii) deficiencies in Resource Capital's internal controls; and (iv) that as a result of the foregoing, Resource Capital's public statements were materially false and misleading at all relevant times.

5.      The truth concerning the misconduct in the Company's business practices was concealed from shareholders until at least August 4, 2015, when the Company issued a press

release announcing its financial results for the three and six months ended June 30, 2015, stating

in part:

> *Resource Capital Corp.* (NYSE: RSO) ("RSO" or the "Company"), a real estate investment trust, or REIT, whose investment strategy focuses on CRE assets, commercial mortgage-backed securities ("CMBS"), commercial finance assets and other investments, reported results for the three and six months ended June 30, 2015.
>
> - AFFO for the three and six months ended June 30, 2015 was $20.1 million, or $0.15 per share and $41.3 million, or $0.31 per share, respectively, as compared to $24.0 million, or $0.19 per share and $49.0 million, or $0.38 for the three and six months ended June 30, 2014, respectively. A reconciliation of GAAP net income (loss) to AFFO is set forth in Schedule I of this release.
>
> - GAAP net loss allocable to common shares for the three and six months ended June 30, 2015 was ($31.0) million, or $(0.24) per share-diluted and ($21.6) million, or $(0.16) as compared to net income of $14.7 million, or $0.11 per share-diluted and $29.8 million, or $0.23 for the three and six months ended June 30, 2014, respectively.
>
> - ***RSO recognized an impairment of $41.1 million on a legacy mezzanine loan representing $38.1 million in loan principal and $3.0 million in accrued interest reversals, or $(0.29) and $(0.02) per common share, respectively*** . . . .
>
> ***Impairment***
>
> During the quarter ended June 30, 2015, the Company recorded a substantial allowance for loan loss on a subordinated mezzanine loan position that was acquired in 2007. ***The outstanding loan balance of $38.1 million was fully reserved, and associated accrued interest of $3.0 million was reversed against interest income, for a total charge to operations of $41.1 million. The loan was originally supported by a portfolio of 13 hotel properties, most of which were luxury brand hotels. The last three luxury brand hotel properties securing the loan are located in or near San Juan, Puerto Rico, and recent economic and credit disruptions in Puerto Rico resulted in events that caused the Company to determine that the loan should be fully reserved*** .[1]

6.      As a result of the Individual Defendants' conduct, Resource Capital's common

stock traded at artificially inflated levels during the Relevant Period.  In response to the

announcement, which revealed the Company's exposure to risks related to the Mezzanine Loan,

---

[1] Unless otherwise noted, all emphasis has been added by Plaintiffs.

investors sold the Company's stock on heavy volume, and the stock price plummeted to close at $3.05 on August 5, 2015, a decline of approximately 12%.

7.      In accordance with Maryland law,[2] on November 4, 2016, Plaintiffs made a written demand (the "Demand") on Resource Capital's Board of Directors ("Board") to investigate and take the necessary legal action against those responsible for the damages the Company has suffered.  The Board has unreasonably refused Plaintiffs' Demand and has acted on an uninformed basis in doing so.

8.      In light of the Board's unreasonable refusal of Plaintiffs' Demand to investigate and remediate harms caused to the Company, Plaintiffs now file this Complaint.  Thus, Plaintiffs rightfully bring this action to vindicate Resource Capital's rights against its wayward fiduciaries and to hold those fiduciaries responsible for the damages they have caused to Resource Capital.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over all claims pursuant to (i) 28 U.S.C. § 1331 in that the Complaint states a federal question and (ii) 28 U.S.C. § 1332(a)(2) in that Plaintiffs and Defendants are citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interests or costs.  The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.      The Court has jurisdiction over each Defendant because each Defendant is either a corporation that does sufficient business in New York, or is an individual who has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by the New York courts permissible under traditional notions of fair play and substantial justice.

---

[2]  Resource Capital is a Maryland corporation.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because many of the acts and practices complained of herein occurred in this District, and the Company conducts business in and maintains executive offices in this District.

12.     In connection with the acts and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets.

### THE PARTIES

#### A.     Plaintiff

13.     Plaintiffs Dave Sherek ("Sherek") and Robert H. Spiegel ("Spiegel") are, and at all relevant times have been, holders of Resource Capital common stock.  Plaintiff Sherek has continuously held Resource Capital stock since October 17, 2012, and is a citizen of Minnesota.  Plaintiff Spiegel has continuously held Resource Capital stock since August 17, 2010, and is a citizen of Arizona.

#### B.     Nominal Defendant

14.     Nominal Defendant Resource Capital is a diversified REIT incorporated in Maryland, and the Company's principal executive offices are located at 712 Fifth Avenue, Twelfth Floor, New York, NY 10019.  The Company's common stock is traded on the New York Stock Exchange under the ticker symbol "RSO."  The Company has more than 31 million shares outstanding.  The Company is externally managed by Resource Manager Resource Capital Management ("Resource Manager") which, prior to September 2016, was a wholly-owned subsidiary of Resource America, Inc. ("Resource America").  In September 2016, Resource America was acquired by C-III Capital Partners ("C-III"), and C-III also assumed

control of the management agreement between Resource Manager and Resource Capital (the "Management Agreement").

### C.    Individual Defendants

15.    Defendant Steven J. Kessler ("Kessler") has been a director of Resource Capital since November 2009.    Kessler was the Company's Chairman of the Board from November 2009 to November 2016.    Before that, Kessler was the Company's Senior Vice President from September 2005 to November 2009, and Chief Financial Officer ("CFO"), Chief Accounting Officer ("CAO"), and Treasurer from March 2005 to September 2005.    Kessler received $604,161 in total compensation from Resource Capital in 2012, $368,649 in total compensation from Resource Capital in 2013, $346,399 in total compensation from Resource Capital in 2014, and $347,923 in total compensation from Resource Capital in 2015.    Kessler is a citizen of Pennsylvania.

16.    Defendant David J. Bryant ("Bryant") has been the Company's CFO, Senior Vice President, and Treasurer since June 2006.    Bryant is a defendant in the Securities Class Action. Bryant received $924,990 in total compensation from Resource Capital in 2012, $624,990 in total compensation from Resource Capital in 2013, $639,996 in total compensation from Resource Capital in 2014, and $674,998 in total compensation from Resource Capital in 2015. Bryant is a citizen of Pennsylvania.

17.    Defendant Eldron C. Blackwell has been the Company's CAO and Vice President since March 2014.    Blackwell is a defendant in the Securities Class Action.    Blackwell is a citizen of Pennsylvania.

18.    Defendant David E. Bloom has been the Company's Senior Vice President of Real Estate Investments since 2005.  Bloom is a defendant in the Securities Class Action.  Bloom

- 6 -

received $799,997 in total compensation from Resource Capital in 2012, $299,997 in total compensation from Resource Capital in 2013, $149,996 in total compensation from Resource Capital in 2014, and $174,999 in total compensation from Resource Capital in 2015.  Bloom is a citizen of New Jersey.

19.    Defendant Walter T. Beach ("Beach") has been a director of Resource Capital since March 2005.   Beach was also a member of the Company's Audit Committee and Investment Committee from at least April 2012 to April 2016.  Beach received $124,995 in total compensation from Resource Capital in 2012, $219,999 in total compensation from Resource Capital in 2013, $219,995 in total compensation from Resource Capital in 2014, and $220,001 in total compensation from Resource Capital in 2015.  Beach is a citizen of New York.

20.    Defendant Edward E. Cohen ("E. Cohen") was a director of Resource Capital from March 2005 until September 2016, and was the Company's Chairman of the Board from March 2005 to November 2009.  E. Cohen has also held positions with other affiliates of Resource America, and he is one of Resource America's two largest beneficial stockowners, collectively owning approximately 30% of the shares together with his son, Defendant Jonathan Cohen.  E. Cohen received $5,105,174 in total compensation from Resource Capital in 2012 and $3,018,491 in total compensation from Resource Capital in 2013.  E. Cohen is a citizen of Florida.

21.    Defendant Jonathan Z. Cohen ("Jonathan Cohen") was Resource Capital's President, Chief Executive Officer ("CEO"), and a director from March 2005 until September 2016. Jonathan Cohen was also the Chair of the Company's Investment Committee from at least April 2012 to April 2016.   Jonathan Cohen is a defendant in the Securities Class Action. Jonathan Cohen has also held positions with other affiliates of Resource America, and he is one

of Resource America's two largest beneficial stockowners, collectively owning approximately 30% of the shares together with his father, Defendant E. Cohen. Jonathan Cohen received $2,750,000 in total compensation from Resource Capital in 2012, $1,249,998 in total compensation from Resource Capital in 2013, $1,999,997 in total compensation from Resource Capital in 2014, and $199,993 in total compensation from Resource Capital in 2015. Jonathan Cohen is a citizen of New York.

22. Defendant Richard L. Fore ("Fore") has been a director of Resource Capital since March 2013. Fore was also a member of the Company's Investment Committee from at least April 2014 to April 2016. Fore received $144,301 in total compensation from Resource Capital in 2013, $199,995 in total compensation from Resource Capital in 2014, and $200,013 in total compensation from Resource Capital in 2015. Fore is a citizen of Nevada.

23. Defendant William B. Hart ("Hart") has been a director of Resource Capital since March 2005. Hart was also a member of the Company's Audit Committee from at least April 2012 to April 2016. Hart received $74,995 in total compensation from Resource Capital in 2012, $109,993 in total compensation from Resource Capital in 2013, $109,996 in total compensation from Resource Capital in 2014, and $110,006 in total compensation from Resource Capital in 2015. Hart is a citizen of Virginia.

24. Defendant Gary Ickowicz ("Ickowicz") has been a director of Resource Capital since February 2007. Ickowicz was also a member of the Company's Investment Committee from at least April 2012 to April 2016. Ickowicz received $125,000 in total compensation from Resource Capital in 2012, $199,992 in total compensation from Resource Capital in 2013, $199,996 in total compensation from Resource Capital in 2014, and $199,998 in total compensation from Resource Capital in 2015. Ickowicz is a citizen of New Jersey.

25.    Defendant Murray S. Levin ("Levin") has been a director of Resource Capital since March 2005.  Levin received $74,995 in total compensation from Resource Capital in 2012, $104,993 in total compensation from Resource Capital in 2013, $104,996 in total compensation from Resource Capital in 2014, and $105,006 in total compensation from Resource Capital in 2015.  Levin is a citizen of Pennsylvania.

26.    Defendant P. Sherrill Neff ("Neff") has been a director of Resource Capital since March 2005.  Neff was also the Chair of the Company's Audit Committee from at least April 2012 to April 2016.  Neff received $74,995 in total compensation from Resource Capital in 2012, $119,999 in total compensation from Resource Capital in 2013, $119,996 in total compensation from Resource Capital in 2014, and $120,001 in total compensation from Resource Capital in 2015.  Neff is a citizen of Pennsylvania.

27.    Defendant Stephanie H. Wiggins ("Wiggins") has been a director of Resource Capital since June 2013.  Wiggins was also a member of the Company's Audit Committee from at least April 2015 to April 2016.  Wiggins received $72,008 in total compensation from Resource Capital in 2013, $104,999 in total compensation from Resource Capital in 2014, and $110,004 in total compensation from Resource Capital in 2015.  Wiggins is a citizen of Virginia.

### D.    Non-Parties

28.    Jeffrey P. Cohen ("Jeffrey Cohen") is not a defendant in this action.  He was appointed to serve on the Company's Board in September 2016.

29.    Andrew L. Farkas ("Farkas") is not a defendant in this action.  He was appointed to serve as serve as the Chairman of the Company's Board in September 2016.

### E.    Party Definitions

30.    Defendants Kessler, Bryant, Blackwell, Bloom, Beach, E. Cohen, Jonathan

- 9 -

Cohen, Fore, Hart, Ickowicz, Levin, Neff, and Wiggins are sometimes referred to herein as the "Individual Defendants."

31.     Defendants Kessler, Beach, Fore, Hart, Ickowicz, Levin, Neff, and Wiggins are sometimes referred to herein as the "Director Defendants."

32.     Defendants Beach, Hart, Neff, and Wiggins are sometimes referred to herein as the "Audit Committee Defendants."

## FACTUAL ALLEGATIONS

33.     Resource Capital is a diversified real estate finance company organized as an REIT.   The Company invests in commercial and residential real estate-related assets and commercial finance assets, including debt and equity investments, with a focus on holding and managing commercial mortgage loans and related investments.

34.     As a REIT, Resource Capital is required by law to pay at least 90% of its taxable earnings to shareholders annually as dividends.

35.     The Company is externally managed by Resource Manager.  Prior to September 2016, Resource Manager was a wholly-owned subsidiary of Resource America.  In September 2016, Resource America was acquired by C-III, and C-III also assumed control of the Management Agreement.

36.     As stated in the Company's 2015 Form 10-K:

*Our management agreement was not negotiated at arm's-length and, as a result, may not be as favorable to us as if it had been negotiated with a third-party.*

At the time the management agreement was negotiated, our officers and two of our directors, Edward E. Cohen and Jonathan Z. Cohen, were also officers or directors of the Manager or Resource America. As a consequence, our management agreement was not the result of arm's-length negotiations and its terms, including fees payable, may not be as favorable to us as if it had been negotiated with an unaffiliated third-party.

37.     Defendants E. Cohen and Jonathan Cohen, father and son, are Resource America's largest stockholders, collectively beneficially owning approximately 30% of Resource America's shares.   Although E. Cohen and Jonathan Cohen retired from the Board in September 2016, they continue to exercise control over the Company through their very large stock holdings.   In addition, E. Cohen and Jonathan Cohen exert significant influence on the Company's operating policies and investment strategies through Resource America and Resource Manager.

38.     Pursuant to the Management Agreement, the Company must pay Resource Manager "a monthly base management fee equal to 1/12 of [the Company's] equity, as defined in the management agreement, times 1.50%, regardless of the performance of our portfolio."  As disclosed in the Company's 2015 Form 10-K: "The Manager's entitlement to substantial non-performance based compensation might reduce its incentive to devote its time and effort to seeking profitable opportunities for our portfolio. This in turn could hurt our ability to make distributions to our stockholders."

39.     Further, the Management Agreement is structured to make termination burdensome and costly.  As stated in the Company's 2015 Form 10-K:

> *Termination of the management agreement by us without cause is difficult and could be costly.*
>
> Termination of our management agreement without cause is difficult and could be costly. We may terminate the management agreement without cause only annually upon the affirmative vote of at least two-thirds of our independent directors or by a vote of the holders of at least a majority of our outstanding common stock, based upon unsatisfactory performance by the Manager that is materially detrimental to us or a determination that the management fee payable to the Manager is not fair. Moreover, with respect to a determination that the management fee is not fair, the Manager may prevent termination by accepting a mutually acceptable reduction of management fees. We must give not less than 180 days' prior notice of any termination. Upon any termination without cause, the Manager will be paid a termination fee equal to four times the sum of the

average annual base management fee and the average annual incentive compensation earned by it during the two 12-month periods immediately preceding the date of termination, calculated as of the end of the most recently completed fiscal quarter before the date of termination.

40.    Resource Capital was founded in 2005 and is incorporated in Maryland, with executive offices located in New York, NY.

**Background to the Mezzanine Loan**

41.    In 2007, the Company acquired the Mezzanine Loan, which was initially backed by a portfolio of thirteen luxury hotels owned by The Blackstone Group ("Blackstone"), including three hotels in Puerto Rico.  The portfolio also backed $742.5 million of debt securitized through the Wachovia Bank Commercial Mortgage Trust, 2007-WHALE8 (the "2007-WHALE8 Trust").

42.    At the time that the Company took an ownership position in the Mezzanine Loan, Puerto Rico's economy was falling into a recession that correlated with the economic downturn in the United States between 2007 and 2009.  However, although the United States began to recover economically after 2011, the economy in Puerto Rico continued to decline, and the residential real estate market in Puerto Rico was significantly impacted.

43.    As the assets backing the 2007-WHALE8 Trust began to lose value, rating agencies began to downgrade the ratings assigned to the securities issued by the 2007-WHALE8 Trust.  By December 9, 2010, Moody's Investors Service ("Moody's") issued a press release stating that it had downgraded 11 classes of the 2007-WHALE8 Trust securities, noting that there were now only 12 hotels in the portfolio backing the Mezzanine Loan.  As stated in the press release:

> The largest loan in the pool is secured by fee interests in LXR Hospitality Pool Loan ($948 million, or 64% of the pooled balance plus $124 million of rake bonds within the trust).  ***The hotel portfolio includes 12 properties located in***

*Puerto Rico, FL, CA, AZ, Jamaica and NY. The Park Shore Waikiki asset located in Hawaii was released.  The sponsor is The Blackstone Group*.  There is additional debt in the form of non-trust junior component and mezzanine debt outside the trust.

44.    On July 26, 2012, Moody's issued a press release stating that it had downgraded 6 classes of the 2007-WHALE8 Trust securities.  Further, even though the loan backed by the portfolio backing the Mezzanine Loan had matured in May 2012, Blackstone had been unable to pay the lender, and the special servicer had granted forbearance to Blackstone until August 2012.  As stated in the press release:

> The largest loan in the pool is secured by fee interests in LXR Hospitality Pool Loan ($948 million, or 76% of the pooled balance plus $124 million of rake bonds within the trust). The hotel portfolio includes 12 properties located in Puerto Rico, FL, CA, AZ, Jamaica and NY.  The Park Shore Waikiki asset located in Hawaii was released.  The sponsor is The Blackstone Group.  There is additional debt in the form of non-trust junior component and mezzanine debt outside the trust.  The loan matured in May 2012, and the special servicer (Bank of America Merrill Lynch) has granted forbearance through August 2012 to continue discussions with the borrower.  Cash management has been in place since March 2010 due to low performance.

45.    By September 2012, Blackstone was unable to meet its payment obligations and entered into a forbearance extension agreement, which provided for the sale or refinance of the assets by May 9, 2014, and completion and full repayment of the mortgage debt by September 9, 2014.

46.    Despite the decline in Puerto Rico's economy and the troubled performance of the portfolio backing the Mezzanine Loan, the Individual Defendants failed to disclose these risks to the Company's shareholders, and instead released false and misleading statements about the Company's business operations and investment performance.

**False and Misleading Statements**

47.    During the Relevant Period, the Individual Defendants made and caused the Company to make false and misleading statements concerning the Company's business model,

- 13 -

financial prospects, and operational and compliance policies, including a failure to disclose: (i) risks related to the Mezzanine Loan, including the Company's increasing exposure to Puerto Rico's ongoing economic decline; (ii) the true quality and performance of the Company's loans; (iii) deficiencies in Resource Capital's internal controls; and (iv) that as a result of the foregoing, Resource Capital's public statements were materially false and misleading at all relevant times.

48.     On October 31, 2012, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the third quarter 2012, during which the Individual Defendants reassured investors, analysts, and media representatives that the Company's assets were performing well.  During the call, Defendant Jonathan Cohen stated:

> ***Our portfolio of loans continued to perform well***.  During 2012, we have grown our real estate loan portfolio by over $150 million net.  We expect this trend to continue as we continue to find good opportunities to lend money against good real estate.  We have greatly strived to grow our origination channel in real estate and we believe that the investments we have made in our team and systems will start to pay off.
>
> While our portfolio stayed constant for the quarter due to repayments from a legacy $28 million loan, legacy meaning made before the crisis, and another $6.5 million loan made in 2011, we underwrote and funded a series of, in my opinion, very attractive loans.  We are picking up pace and expect this portfolio to grow tremendously in the next few quarters, net of payoffs.  Dave Bloom will elaborate on this in the real estate portfolio momentarily.

49.     Additionally, during the call Defendant Bloom stated:

> Credit across the portfolio continues to trend in a positive direction with improving metrics across all asset classes. The majority of the properties securing our loans are continuing to realize improved cash flow on a quarter-over-quarter basis.  ***And the entire portfolio remains performing with no defaults***.  As assets are recapitalized or sold and paid off, the few legacy positions that require extra asset management attention grows smaller each quarter.   And we remain extremely focused on the ultimate resolution of the limited number of situations.

50.     These statements were false and misleading because on the date that these statements were made, Moody's had already downgraded the 2007-WHALE8 Trust securities, and Blackstone had already entered into a forbearance agreement because it was not meeting its

- 14 -

payment obligations.  Under the agreement, Blackstone was seeking to sell the assets underlying the 2007-WHALE8 Trust and the Mezzanine Loan.  Given the true status of the Mezzanine Loan, the statements and representations made by the Individual Defendants were materially false and misleading.

51.     On November 9, 2012, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2012 (the "Q3 2012 10-Q").  The Q3 2012 10-Q did not include any disclosure regarding the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, and stated that "[a]ll of the Company's commercial real estate loans were performing as of September 30, 2012 and December 31, 2011."

52.     The Q3 2012 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.

53.     On March 5, 2013, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the fourth quarter and full year 2012, during which the Individual Defendants continued to state that the Company's assets were performing well.  During the call, Defendant Jonathan Cohen stated:

> Our credit quality is stable and improving and other than the legacy loans we have sold in our syndicated bank loan facility, we feel like the credit environment for us is excellent. We took a modest provision on real estate loans in fourth quarter of $400,000. *However, all 43 of our outstanding real estate loans are performing and we see a trend of improving property performance underlying these loans beginning in 2011 through the year-end 2012 and continuing into 2013*.  That is, our real estate loss is shrinking.

- 15 -

. . . .

Our liquidity remains excellent. We had approximately $180 million of cash including $94 million of unrestricted cash as of December 31, even after making considerable investment during the quarter.  Stay tuned for more investments. *Our portfolio of real estate loans continued to perform well.*  During 2012, we have grown our real estate loan portfolio by over $175 million.  We expect this trend to continue as Dave Bloom and his real estate team continue to find out good opportunities from that money against good real estate.  We have generally strived to grow our origination channel and we believe that the investments we have made in our team and system, will start to pay off or have started to pay off and will continue to start to pay off.

54.     On March 18, 2013, the Individual Defendants caused Resource Capital to file its Annual Report for 2012 on Form 10-K with the SEC, which announced the Company's financial and operating results for the quarter and year ended December 31, 2012 (the "2012 10-K"). The 2012 10-K did not include any disclosures regarding the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, and stated that "[a]ll of our commercial real estate loans were performing as of December 31, 2012 and 2011."

55.     Resource Capital's 2012 Form 10-K contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the 2012 Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.  In addition to Jonathan Cohen and Bryant, the 2012 Form 10-K was also signed by Defendants Kessler, Beach, E. Cohen, Hart, Ickowicz, Levin, and Neff.  The certifications were materially false and misleading as to: (i) the quality and effectiveness of the Company's internal controls; and (ii) the completeness of the disclosures, which omitted material information including the Company's exposure to the economic crisis in Puerto Rico, the credit quality of the Company's mezzanine loan portfolio, and the performance of the Company's mezzanine loans.

56.     In addition, the 2012 Form 10-K also failed to comply with Item 303 of Regulation S-K by failing to disclose the Company's exposure to the Puerto Rican economic crisis.   17 C.F.R. § 229.303(a)(3)(i).   The Mezzanine Loan's increasing concentration of collateral within Puerto Rico exposed the Company to significant risks due to the decline in the Puerto Rican economy.  Because this exposure was likely to have a negative material impact on the Company's operations, the Individual Defendants should have disclosed these risks.

57.     On April 18, 2013, the Individual Defendants caused Resource Capital to file a Proxy Statement pursuant to Section 14(a) of the Exchange Act ("2013 Proxy").   The 2013 Proxy described director responsibilities, the duties of each committee, Board risk management, and provided information about the director nominees up for election.  However, the 2013 Proxy misrepresented and/or failed to disclose: (i) risks related to the Mezzanine Loan, including the Company's increasing exposure to Puerto Rico's ongoing economic decline; (ii) the true quality and performance of the Company's loans; (iii) deficiencies in Resource Capital's internal controls; and (iv) that as a result of the foregoing, Resource Capital's public statements were materially false and misleading at all relevant times.

58.     The 2013 Proxy also stated that based on the Company's "performance," the Company awarded its named executive officers more than $5.5 million in stock awards in 2012. The 2013 Proxy omitted material information concerning the Company's true performance, and did not disclose the Company's inadequate internal controls that led to the Board approving compensation awards based on inflated levels of performance.

59.     On May 8, 2013, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the first quarter 2013, during which

the Individual Defendants continued to state that the Company's assets were performing well. During the call, Defendant Bloom stated:

> We note improving metrics across all asset classes with the majority of the properties securing our loans realizing improved cash flow year-over-year and continuing to trend in an upward direction.  In addition we are pleased to see that the majority of the asset-specific business plans across the portfolio are well on track and progressing towards the realization of borrowers' plans for value creation and ***the entire portfolio remains performing with no defaults***.

60.    On May 10, 2013, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2013 (the "Q1 2013 10-Q").  The Q1 2013 10-Q failed to disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, and stated that: "All of the Company's commercial real estate loans were performing as of March 31, 2013 and December 31, 2012."

61.    The Q1 2013 10-Q contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.

62.    On August 7, 2013, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the second quarter 2013, during which the Individual Defendants continued to reassure investors that the Company's assets were performing well, including mezzanine loans.  During the call, Defendant Bloom stated:

> Credit across the portfolio continues to trend in a positive direction with improving metrics across all asset classes.  The majority of the properties securing our loans are continuing to realize improved cash flow and we are seeing borrowers' plans for value creation on or ahead of budget.  ***Once again I am pleased to report that the entire portfolio is performing with no defaults.***

63.     On August 9, 2013, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2013 (the "Q2 2013 10-Q").  The Q2 2013 10-Q failed to disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, and stated that: "All of the Company's commercial real estate loans were performing as of June 30, 2013 and December 31, 2012."

64.     In addition, the Q2 2013 10-Q contained false and misleading statements about the Company's mezzanine loan portfolio by indicating that there were no mezzanine loans included in the category of "troubled-debt restructurings" as of June 30, 2013.

65.     The Q2 2013 10-Q contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and that it disclosed any material changes to the Company's internal control over financial reporting.

66.     On November 6, 2013, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the third quarter 2013, during which the Individual Defendants continued to reassure investors that the Company's assets were performing well, including mezzanine loans.  During the call, Defendant Bryant stated that "remarkably, all of our real estate loans are current and performing."  Further, Defendant Bloom stated:

> We are improving metrics across all asset classes with the majority of the property securing our loans realizing improved cash flow on a year-over-year basis and continuing to trend in upward direction.  In addition, we are pleased to see that the majority of the asset specific plans across the portfolio are well on track and progressing towards realization ultimately of the borrowers' plans for value creation and *the entire portfolio remains performing with no defaults*.  *We are very particular about markets in which we lend, sponsor quality and asset-*

- 19 -

*specific business plans and the resilience of the assets I just described is a daily reminder that validates our keen focus on credit first approach to our business.*

67.    On November 12, 2013, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2013 (the "Q3 2013 10-Q"). The Q3 2013 10-Q failed to disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, and stated that "[a]ll of the Company's commercial real estate loans were performing as of September 30, 2013 and December 31, 2012."

68.    In addition, the Q3 2013 10-Q contained false and misleading statements about the Company's mezzanine loan portfolio by indicating that there were no mezzanine loans included in the category of "troubled-debt restructurings" as of September 30, 2013.

69.    The Q3 2013 10-Q contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and that it disclosed any material changes to the Company's internal control over financial reporting.

70.    On February 26, 2014, weeks after all three of the major credit rating agencies had downgraded Puerto Rico's debt to junk status, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the fourth quarter and full year 2013, during which the Individual Defendants continued to reassure investors that the Company's assets were performing well, including its mezzanine loans. During the call, Defendant Bryant stated that "all 57 of our real estate loans are current and performing," while Defendant Bloom added:

> We're again pleased to report that ***the entire RSO commercial mortgage portfolio is performing with no defaults***. We're very particular about markets in which we lend, while additional markets continued to recover the depth and breadth of a

- 20 -

given market, sponsor experience and asset specific business plans all play heavily in our underwriting process. In addition although we're lending on lightly transitional properties, *we continue to target properties with stabilized projections that stand up to rigorous stressed underwriting and verification* with day one cash flow coverage and meaningful sponsor equity.

71.    On March 3, 2014, the Individual Defendants caused Resource Capital to file an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2013 (the "2013 10-K"). The 2013 10-K did not include any disclosures regarding the Mezzanine Loan and the Company's increasing exposure to Puerto Rico's ongoing economic decline, and stated that "[a]ll of our commercial real estate loans were performing as of December 31, 2013 and December 31, 2012."

72.    Resource Capital's 2013 Form 10-K contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the 2013 Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting. In addition to Jonathan Cohen and Bryant, the 2013 Form 10-K was signed by Defendants Kessler, Beach, E. Cohen, Hart, Ickowicz, Levin, Neff, and Wiggins. The certifications were materially false and misleading as to: (i) the quality and effectiveness of the Company's internal controls; and (ii) the completeness of the disclosure, due to the omission of material information including the Company's exposure to the economic crisis in Puerto Rico, the credit quality of the Company's mezzanine loan portfolio, and the performance of the Company's mezzanine loans.

73.    In addition, the 2013 Form 10-K also failed to comply with Item 303 of Regulation S-K by failing to disclose the Company's exposure to the Puerto Rican economic crisis. 17 C.F.R. § 229.303(a)(3)(i). The Mezzanine Loan's increasing concentration of collateral within Puerto Rico exposed the Company to significant risks due to the decline in the

- 21 -

Puerto Rican economy.  Because this exposure was likely to have a negative material impact on the Company's operations, the Individual Defendants should have disclosed these risks.

74.    Further, the 2013 Form 10-K contained false and misleading statements about the Company's mezzanine loan portfolio by indicating that there were no mezzanine loans included in the category of "troubled-debt restructurings" as of December 31, 2013.    This misrepresentation gave the impression that the Company's mezzanine loan portfolio had improved from the previous year, when the 2012 Form 10-K had disclosed one $38.072 million mezzanine loan in the troubled debt restructuring table.

75.    On April 16, 2014, the Individual Defendants caused Resource Capital to file a Proxy Statement pursuant to Section 14(a) of the Exchange Act ("2014 Proxy").  The 2014 Proxy described director responsibilities, the duties of each committee, and Board risk management, and also provided information about the director nominees up for election. However, the 2014 Proxy misrepresented and/or failed to disclose: (i) risks related to the Mezzanine Loan, including the Company's increasing exposure to Puerto Rico's ongoing economic decline; (ii) the true quality and performance of the Company's loans; (iii) deficiencies in Resource Capital's internal controls; and (iv) that as a result of the foregoing, Resource Capital's public statements were materially false and misleading at all relevant times.

76.    The 2014 Proxy also stated that based on the Company's "performance," the Company awarded its named executive officers more than $2 million in stock awards in 2013. The 2014 Proxy omitted material information concerning the Company's true performance, and did not disclose the Company's inadequate internal controls that led to the Board approving compensation awards based on inflated levels of performance.

77.     On May 1, 2014, Moody's issued a press release stating that it had affirmed the current ratings on the 2007-WHALE8 Trust securities.  The ratings on the LXR-1 and LXR-2 classes remained at Caa1 and Caa3, respectively.  According to Moody's, "[o]bligations rated Caa are judged to be speculative of poor standing and are subject to very high credit risk."  Further, there were now only eight hotels backing the Mezzanine Loan, and Blackstone continued to be unable to make the repayment obligations.  As stated in the press release:

> The largest loan in the pool is secured by fee interests in LXR Hospitality Pool Loan ($599 million, or 68% of the pooled balance plus $124 million of non-pooled, or rake bonds within the trust). ***The remaining hotels include eight properties located in Arizona, Florida, Puerto Rico, and Jamaica***. The Park Shore Waikiki, HI, Golden Door Spa in San Marcos, CA, Miami Beach Resort & Spa, FL, Wyndham Garden LaGuardia, NY, and The London West Hollywood, CA have been released to date.  The sponsor is The Blackstone Group.  There is additional debt in the form of non-trust junior component and mezzanine debt outside the trust.

> The previous special servicer (Bank of America, N.A.) completed a Forbearance Extension and Property Disposition Cooperation Agreement in September 2012. ***The plan provides for principal pay down from sale or refinance in the total amount of $447.45 million by May 9, 2014, and full repayment of the mortgage debt on September 9, 2014.  The borrower has requested an additional time and modification to the existing forbearance agreement at this time***.  The current special servicer (Key Bank, National Association) is in discussions with the borrower.

78.     On May 7, 2014, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the first quarter 2014, during which the Individual Defendants continued to state that the Company's assets were performing well.  During the call, Defendant Bloom reiterated that the Company's entire real estate portfolio was performing, stating:

> Credit across the portfolio continues to trend in very positive direction, with improving metrics across all assets classes. The majority of the properties securing our loans are continuing to realize improved cash flow and receiving borrower's plans for value creation well on or ahead of track.  ***Once again, I'm***

- 23 -

*pleased to report that the entire commercial real estate loan portfolio is performing with no defaults*.

79.    On May 9, 2014, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 10-Q").  The Q1 2014 10-Q failed to disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, or the credit rating downgrades to the 2007-WHALE8 Trust securities, and stated that "[a]ll of the Company's commercial real estate loans were performing as of March 31, 2014 and December 31, 2013."

80.    The Q1 2014 10-Q contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.

81.    On August 6, 2014, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the second quarter 2014, during which the Individual Defendants continued to state that the Company's assets were performing well.  During the call, Defendant Bloom reiterated that the Company's entire real estate portfolio was performing, stating:

> We also note improving credit metrics across all asset classes represented in our commercial real estate portfolio.  The majority of the properties securing our loans are continuing to realize improved cash flow with borrowers plans for value creation well on track.  *I'm once, again, pleased to report that the entire commercial real estate loan portfolio is performing with no defaults*.

82.    On August 8, 2014, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 10-Q").  The Q2 2014 10-Q failed to

- 24 -

disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, or the credit rating downgrades to the 2007-WHALE8 Trust securities, and further stated that "[a]ll of the Company's commercial real estate loans were performing as of June 30, 2014 and December 31, 2013."

83.    In addition, the Q2 2014 10-Q contained false and misleading statements about the Company's mezzanine loan portfolio by indicating that there were no mezzanine loans included in the category of "troubled-debt restructurings" as of June 30, 2014.

84.    The Q2 2014 10-Q contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.

85.    On November 4, 2014, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the third quarter 2014, during which the Individual Defendants continued to state that the Company's assets were performing well.  During the call, Defendant Bloom reiterated that the Company's entire real estate portfolio was performing, stating: "*I am once again pleased to report that the entire commercial real estate loan portfolio is performing with no defaults*."

86.    On November 10, 2014, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 10-Q").  The Q3 2014 10-Q failed to disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, or the credit rating downgrades to the 2007-WHALE8

- 25 -

Trust securities, and stated that: "[a]ll of the Company's commercial real estate loans were performing as of September 30, 2014 and December 31, 2013."

87.    The Q3 2014 10-Q contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.

88.    On February 26, 2015, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the fourth quarter and full year 2014, during which the Individual Defendants continued to state that the Company's assets were performing well.  During the call, Defendant Bloom reiterated that the Company's entire real estate portfolio was performing, stating:

> We will continue to utilize our $600 million term financing facilities to support the growth of our new loan originations and we plan to access the CLO market to optimally match-fund our assets on a regular basis.  We note improving credit metrics across all asset classes represented in our commercial real estate loan portfolio, the majority of the properties securing our loans continuing to realize improved cash flow with borrowers' plans for value creation well on track.  ***I am once again pleased to report the entire commercial real estate portfolio is performing with no defaults***.

89.    On March 2, 2015, the Individual Defendants caused Resource Capital to file an annual report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2014 (the "2014 10-K").  The 2014 10-K failed to disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan, or the credit rating downgrades to the 2007-WHALE8 Trust securities, and stated that "[a]ll of our commercial real estate loans were performing as of December 31, 2014 and 2013."

90.    Resource Capital's 2014 Form 10-K contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the 2014 Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.  In addition to Jonathan Cohen and Bryant, the 2014 Form 10-K was signed by Defendants Kessler, Beach, E. Cohen, Hart, Ickowicz, Levin, Neff, and Wiggins.  The certifications were materially false and misleading as to: (i) the quality and effectiveness of the Company's internal controls; and (ii) the completeness of the disclosure, due to the omission of material information including the Company's exposure to the economic crisis in Puerto Rico, the credit quality of the Company's mezzanine loan portfolio, and the performance of the Company's mezzanine loans.

91.    In addition, the 2014 Form 10-K also failed to comply with Item 303 of Regulation S-K by failing to disclose the Company's exposure to the Puerto Rican economic crisis.   17 C.F.R. § 229.303(a)(3)(i).   The Mezzanine Loan's increasing concentration of collateral within Puerto Rico exposed the Company to significant risks due to the decline in the Puerto Rican economy.  Because this exposure was likely to have a negative material impact on the Company's operations, the Individual Defendants should have disclosed these risks.

92.    Further, the 2014 Form 10-K contained false and misleading statements about the Company's mezzanine loan portfolio by stating that all mezzanine loans were "performing" with a risk level of one or two, stating:

### Commercial Real Estate Loans

We use a risk grading matrix to assign grades to commercial real estate loans. Loans are graded at inception and updates to assigned grades are made continually as new information is received. Loans are graded on a scale of 1-4 with 1 representing our highest rating and 4 representing our lowest rating. We value loans that are sold after the period end at the lower of our fair market value or cost, net of any allowances and costs associated with the loan sales. In addition to the underlying performance of the loan collateral, we consider such things as

- 27 -

the strength of underlying sponsorship, payment history, collectability of interest, structural credit enhancements, market trends and loan terms in grading our commercial real estate loans.

93.    On April 23, 2015, the Individual Defendants caused Resource Capital to file a Proxy Statement pursuant to Section 14(a) of the Exchange Act ("2015 Proxy").  The 2015 Proxy described director responsibilities, the duties of each committee, Board risk management, and provided information about the director nominees up for election.  However, the 2015 Proxy misrepresented and/or failed to disclose: (i) risks related to the Mezzanine Loan, including the Company's increasing exposure to Puerto Rico's ongoing economic decline; (ii) the true quality and performance of the Company's loans; (iii) deficiencies in Resource Capital's internal controls; and (iv) that as a result of the foregoing, Resource Capital's public statements were materially false and misleading at all relevant times.

94.    The 2015 Proxy also stated that based on the Company's "performance," the Company awarded its named executive officers more than $2.5 million in stock awards in 2014. The 2015 Proxy omitted material information concerning the Company's true performance and did not disclose the Company's inadequate internal controls that led to the Board approving compensation awards based on inflated levels of performance.

95.    On May 6, 2015, the Individual Defendants caused Resource Capital to hold a conference call regarding the Company's financial results for the first quarter 2015, during which the Individual Defendants continued to state that the Company's assets were performing well. During the call, Defendant Bloom reiterated that he was "once again pleased to report the entire commercial real estate portfolio is performing with no defaults," and Defendant Bryant added that "all 79 of [the Company's] real estate loans totaling $1.5 billion are current."

96.    On May 11, 2015, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating

- 28 -

results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").  The Q1 2015 10-Q failed to disclose the Company's increasing exposure to Puerto Rico's ongoing economic decline related to the Mezzanine Loan or the credit rating downgrades to the 2007-WHALE8 Trust securities, and stated that "[a]ll of the Company's commercial real estate loans were performing as of March 31, 2015 and December 31, 2014."

97.    In addition, the Q1 2015 10-Q contained false and misleading statements about the Company's mezzanine loan portfolio by indicating that there were no mezzanine loans included in the category of "troubled-debt restructurings" as of March 31, 2015.

98.    The Q1 2015 10-Q contained signed certifications pursuant to SOX by Defendants Jonathan Cohen and Bryant, certifying that the financial information contained in the filing was accurate and disclosed any material changes to the Company's internal control over financial reporting.

### THE REASONS THE STATEMENTS WERE FALSE

99.    The true facts, which were known or recklessly disregarded by the Individual Defendants but were concealed from the investing public, were as follows:

(a)    the Company's increasing exposure to Puerto Rico's ongoing economic decline created significant financial risks;

(b)    the portfolio backing the Mezzanine Loan had decreased significantly in value and payments had stopped pursuant to the forbearance agreement between Blackstone and the special servicer;

(c)    despite the repeated assurances by the Individual Defendants that all of the Company's real estate loans were performing, the Mezzanine Loan was not performing;

(d)    the Company lacked adequate internal controls; and

(e)    as a result of the foregoing, the Company's touted financial and business prospects were materially false and misleading at all relevant times.

100.    As a result of the Individual Defendants' false and misleading statements and omissions, Resource Capital shares traded at artificially inflated prices during the Relevant Period. Once the true facts regarding the Company's financial prospects and future business prospects began to emerge, investors sold Resource Capital stock, causing the Company's stock price to fall 12.36% on August 5, 2015, to close at $3.05 per share, erasing millions of dollars in market capitalization.

## THE TRUTH BEGINS TO EMERGE

101.    On August 4, 2015, after the markets closed, the Individual Defendants caused Resource Capital to issue a press release announcing its results for the quarter ended June 30, 2015. Investors and analysts were shocked when the Company disclosed a GAAP net loss of $31 million for the quarter, attributing the loss to the Company's recording of an allowance for $41.1 million for the Mezzanine Loan. As reported in the press release:

*Impairment*

During the quarter ended June 30, 2015, the Company recorded a substantial allowance for loan loss on a subordinated mezzanine loan position that was acquired in 2007. The outstanding loan balance of $38.1 million was fully reserved, and associated accrued interest of $3.0 million was reversed against interest income, for a total charge to operations of $41.1 million. The loan was originally supported by a portfolio of 13 hotel properties, most of which were luxury brand hotels. The last three luxury brand hotel properties securing the loan are located in or near San Juan, Puerto Rico, and recent economic and credit disruptions in Puerto Rico resulted in events that caused the Company to determine that the loan should be fully reserved.

102.    On August 5, 2015, the Individual Defendants caused Resource Capital to hold a conference call to discuss the Company's shocking financial results for the second quarter 2015.

The Individual Defendants conceded that the Company had been exposed to the risk of Puerto Rico's failing economy since 2007 and that the Mezzanine Loan had not been performing since at least 2012.  During the call, Defendant Jonathan Cohen stated:

> [W]e cannot ignore the significant pressure on our stock price which has certainly been a source of frustration for our shareholders and for us personally.
>
> On top of that ***a legacy mezzanine loan that we purchased in 2007, one of the last two mezzanine positions in our portfolio deteriorated suddenly due to its exposure to Puerto Rico and we were forced to impair that asset***.  We stopped investing in this type of loan in 2007 and the remaining mezzanine loan in our portfolio is a very good credit, a $7 million position secured by property in New York City and we expected to pay off within the next 18 months.  This impairment causes our book value to decrease to $4.56 leaving us trading at approximately 78% of GAAP book value.
>
> . . . .
>
> Obviously a large and very disappointing element of our result this quarter was the loan loss reserve that we recognize on our position in a mezzanine loan whose borrower is an affiliate of one of the world's largest private equity firms. The loan we impair was one where we had a small percentage of a subordinated mezzanine position in a complicated multi-tranche $2.8 billion transaction that financed luxury hotels.
>
> ***Our investment was purchased in 2007 at a very well capitalized and committed borrower went through several restructurings over the years to provide runway for the borrower to complete its business plan and we expected to be paid off when that happens***.
>
> ***But the last three assets are in Puerto Rico***. The borrower's ability to favorably refinance its senior loans was impacted by economic and credit conditions in Puerto Rico and the new loan which closed in May meaningfully reduced the borrower's time to achieve its plan. On such highly leveraged transaction even small changes in value can have a large impact on the subordinated tranches which unfortunately is where we were.
>
> ***Accordingly we have fully reserved for it***.

103.    Also during the call, Defendant Bloom stated:

> Jonathan addressed the specific reserve that we took this quarter on a mezzanine loan that was part of a very large multi-tranche financing that included a $1.3 billion first mortgage and $625 million of mezzanine debt split into eight tranches, many with multiple participants and over $830 million of borrower act

equity into the transaction. ***Its important note that this loan dates back to mid-2007 and was restructured and amended in 2012 and since that time, interest was on an accrual basis, so it has not contributed to our income since September of 2012 in any meaningful way***.

***Pursuant to the terms of the extension the loan has not some due, nor is it in default, that said in the ordinary course of closing our quarters we review all of our loan positions and after a review of the subject transaction the determination was made to impair the position in the current quarter as we have serious doubts about the ultimate collectability of the loan upon maturity***. That said, markets can change suddenly and with almost a year until the loan matures, no one can be absolutely certain about the ultimate resolution of this impaired loan.

By way of brief history RSO's commercial real estate business plan has always been to directly originate, floating rate whole loans unlikely transitional properties across the country. Having commenced operations in mid-2005 during the time that we were building out our national origination team, we still recognized relative value in certain mezzanine loans and B note investments. Markets were extremely liquid and the majority of these subject positions paid off in relatively short order, that said we were always cognizant of the fact that multi-tranche debt transactions involved other lenders which results in a lack of unilateral control should a problem arise.

104.    On August 7, 2015, the Individual Defendants caused Resource Capital to file a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q"). The Q2 2015 10-Q finally disclosed (i) the Company's exposure to Puerto Rico's ongoing economic decline through the Mezzanine Loan, which dated back to 2007, and (ii) the extent of the credit risk to the Company's mezzanine loan portfolio. In contrast to the previous disclosures which stated that all of the Company's commercial real estate loans were performing, the Company now stated that it "had no delinquent commercial real estate loans."

105.    Further, the Q2 2015 10-Q gave a significant portion of its mezzanine loans—$38.072 million—the worst risk rating of 4, in contrast to the previous reports which stated that all mezzanine loans had a risk rating of 1 or 2.

106.    In addition, the Company's allowance for loan loss increased to $46.319 million as of June 30, 2015, as compared with $7.385 million as of March 31, 2015, and $4.613 million as of December 31, 2014.

107.    On January 29, 2016, Resource America announced that it had hired an outside advisor to assist the Board in considering strategic alternatives.

108.    On February 12, 2016, an Amended Complaint for Violation of Federal Securities Laws was filed in the Securities Class Action.  The Securities Class Action Amended Complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder against the Company and Defendants Jonathan Cohen, Bryant, Blackwell, and Bloom on behalf of all persons who purchased Company stock between October 31, 2012 and August 5, 2015.

109.    On May 20, 2016, Defendants Jonathan Cohen and E. Cohen notified the Board that they intended to resign as directors of Resource Capital, with the resignations effective September 8, 2016.  The Board appointed Jeffrey Cohen and Farkas as replacement directors on May 21, 2016.

110.    On May 23, 2016, Resource America announced that it would be acquired by C-III.

111.    Jonathan Cohen also resigned as CEO and President effective September 8, 2016, and Robert C. Lieber was appointed as CEO and President.

112.    On October 5, 2016, Judge Louis L. Stanton denied defendants' motion to dismiss the Securities Class Action, finding that statements by Defendants that the Mezzanine Loan was "performing" or "current" were materially misleading, stating:

To describe the Mezzanine Loan as "performing" or "current" without stating the qualification that it was a non-interest-paying troubled debt of a borrower in financial difficulty was, in the words of SEC Rule 10b-5 ". . . to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ." That pleads a prima facie violation of §10(b) of the Exchange Act, 15 U.S.C. § 78j(b).

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

113.   By reason of their positions as officers, directors, and/or fiduciaries of Resource Capital, and because of their ability to control the business and corporate affairs of Resource Capital, the Individual Defendants owed and owe the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Resource Capital in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Resource Capital and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

114.   Each director and officer of the Company owes to Resource Capital and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.

115.   In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's financial and business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

**Audit Committee Duties**

116.     In addition to these duties, the members of the Audit Committee owed specific duties to Resource Capital under the Audit Committee's Charter to review and approve quarterly and annual financial statements and earnings press releases, and to ensure that the Company had appropriate and effective internal controls over financial reporting.

117.     Specifically, according to Resource Capital's Audit Committee Charter, the Audit Committee's responsibilities include the principal functions of assisting the Board in its oversight duties and in this capacity:

- Is responsible for appointing the Company's independent auditors and exercising oversight thereof;

- Is delegated the authority to receive funds and engage advisors as needed;

- Shall monitor the integrity and ensure the transparency of the Company's financial reporting processes and systems of internal controls regarding finance, accounting and regulatory compliance;

- Shall ensure the independence and monitor the performance of the Company's independent auditors and internal auditing department;

- Shall provide an avenue of communication among the independent auditors, management, the internal auditing department and the Board of Directors; and

- To effectively perform his or her role, each Committee member will obtain an understanding of the responsibilities of Audit Committee membership.

118.     Specifically, regarding financial statements and disclosures, the members of the Audit Committee owed specific duties to the Company under the Audit Committee Charter to:

- Review significant accounting and reporting issues and understand their impact on the financial statements.  These issues include:

   o Complex or unusual transactions and highly judgmental areas;

- 35 -

- o Major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles; and

- o The effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company.

- Review analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statement.

- Review with management and the external auditors the results of the audit, including any difficulties encountered. This review will include any restrictions on the scope of the independent auditor's activities or on access to requested information, and any significant disagreements with management.

- Discuss the annual audited financial statements and quarterly financial statements with management and the external auditors prior to filing or distribution. The review should include discussions with management and independent auditors of significant issues regarding accounting principles, practices, and judgments.

- Review disclosures made by CEO and CFO during the Forms 10-K and 10-Q certification process about significant deficiencies, if any, in the design or operation of internal controls or any fraud that involves management or other employees who have a significant role in the Company's internal control.

- Review earnings press releases (particularly use of "pro-forma," or "adjusted" non-GAAP information), as well as financial information and earnings guidance, if any, provided to analysts and rating agencies. This review may be general (i.e., the types of information to be disclosed and the type of presentations to be made). The Audit Committee Chairman and the independent auditors should each indicate their approval to management prior to the issuance of earnings press releases. The Audit Committee Chairman and the external auditors will confer, as necessary, prior to providing such approval.

119. Further, regarding internal controls, the members of the Audit Committee owed specific duties to the Company under the Audit Committee Charter to:

- Consider the effectiveness of the Company's internal control system, including information technology security and control and compliance with the reporting requirements of The Sarbanes-Oxley Act;

- Understand the scope of internal and external auditors' review of internal control over financial reporting, and obtain reports on significant findings and recommendations, together with management's responses;

- In consultation with management and independent accountants, verify that the CEO and CFO have certified that they disclosed to the independent auditors and to the Audit Committee all significant deficiencies, if any, in the design or operation of internal controls that could affect the Company's ability to record, process, summarize and report financial data, any material weaknesses in the internal controls, and fraud – whether or not material – that involved management or other employees who have a significant role in the Company's internal control; and

- Analyze any internal control deficiencies, management or employee fraud identified by the CEO/CFO certification process or by the Disclosure Committee.

120. Upon information and belief, the Company maintained an Audit Committee Charter during the Relevant Period that imposed the same, or substantially and materially the same or similar, duties on the members of the Audit Committee as those set forth above.

**Duties Pursuant to the Company's Code of Conduct and Ethics**

121. Additionally, the Individual Defendants, as officers and/or directors of Resource Capital, are bound by the Company's Code of Business Conduct and Ethics (the "Code") which, according to the Code, "sets out basic principles to guide all employees of Resource Capital Corp. . . . All of our employees must conduct themselves accordingly and seek to avoid even the appearance of improper behavior." Each director and employee of Resource Capital is covered by the Code, as well as the Company's agents, representatives, and consultants.

122. Upon information and belief, the Company maintained a version of the Code during the Relevant Period that imposed the same, or substantially and materially the same, or similar, duties on, among others, the Board as those set forth above.

**Control, Access, and Authority**

123.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Resource Capital, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Resource Capital.

124.    Because of their advisory, executive, managerial, and directorial positions with Resource Capital, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Resource Capital.

125.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Resource Capital, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

126.    To discharge their duties, the officers and directors of Resource Capital were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Resource Capital were required to, among other things:

(a)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business to

- 38 -

avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide shareholders and analysts as to the true financial and business prospects of the Company at any given time, including making accurate statements about the Company's business and financial prospects and internal controls;

(d)     remain informed as to how Resource Capital conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)     ensure that Resource Capital was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## BREACHES OF DUTIES

127.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to Resource Capital and its shareholders the fiduciary duties of loyalty and good faith, and the exercise of due care and diligence in the management and administration of the affairs of Resource Capital, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Resource Capital, the absence of good faith on their part, and a reckless disregard for their duties to Resource Capital and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to Resource Capital.

128.    The Individual Defendants each breached their duties of loyalty and good faith by allowing Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements that misled shareholders into believing that disclosures related to the Company's financial and business prospects were truthful and accurate when made.

129.    In addition, as a result of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject of the Securities Class Action that alleges violations of the federal securities laws, and which has now survived a motion to dismiss under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  As a result, Resource Capital has expended, and will continue to expend, significant sums of money to rectify the Individual Defendants' wrongdoing.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

130.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

131.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that the Company's business and financial prospects were better than they actually were.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

132.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duties and unjust

enrichment; and (b) disguise and misrepresent the Company's actual business and financial prospects.

133. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

134. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

### DAMAGES TO RESOURCE CAPITAL

135. As a result of the Individual Defendants' wrongful conduct, Resource Capital disseminated false and misleading statements and omitted material information to make such statements not false and misleading when made. The improper statements have devastated Resource Capital's credibility. Resource Capital has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

136. As a direct and proximate result of the Individual Defendants' actions as alleged above, Resource Capital's market capitalization has been substantially damaged, losing millions of dollars in value as a result of the conduct described herein.

137.    Further, as a direct and proximate result of the Individual Defendants' conduct, Resource Capital has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)    costs incurred in investigating and defending Resource Capital and certain officers in the pending Securities Class Action, plus potentially millions of dollars in settlement or to satisfy an adverse judgment;

(b)    costs incurred from compensation and benefits paid to the Individual Defendants, which compensation was based at least in part on Resource Capital's artificially-inflated stock price; and

(c)    costs incurred from the loss of the Company's customers' confidence in Resource Capital's products.

138.    Moreover, these actions have irreparably damaged Resource Capital's corporate image and goodwill.  For at least the foreseeable future, Resource Capital will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Resource Capital's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND ALLEGATIONS

139.    Plaintiffs bring this action derivatively in the right and for the benefit of Resource Capital to redress injuries suffered, and to be suffered, by Resource Capital as a direct result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Resource Capital is named as a Nominal Defendant solely in a derivative capacity.

140.    Plaintiffs will adequately and fairly represent the interests of Resource Capital in enforcing and prosecuting its rights.

141.    Each Plaintiff was a shareholder of Resource Capital common stock at the time of the wrongdoing of which Plaintiffs complain, and has been continuously since.

142.    Before filing this derivative action, Plaintiffs first demanded that the Board take action to investigate the misconduct alleged herein and, if warranted, to commence litigation against the Individual Defendants.  Specifically, on November 4, 2016, in accordance with Maryland law, Plaintiffs made a written demand on the Board to investigate and address the misconduct and, if warranted, to commence litigation against the Individual Defendants.  A true and correct copy of Plaintiffs' Demand is attached hereto as Exhibit A (the "Demand").

143.    In response to the Demand, Plaintiffs' counsel received a letter dated November 10, 2016 (the "November 10, 2016 Letter"), from Shelle Weisbaum, who signed the November 10, 2016 Letter in her capacity as the Company's Chief Legal Officer, who requested additional information regarding Plaintiffs' holdings of Resource Capital stock.  A true and correct copy of the November 10, 2016 Letter is attached hereto as Exhibit B.

144.    On December 12, 2016, Plaintiffs' counsel responded by letter (the "December 12, 2016 Letter") to Ms. Weisbaum and provided additional information regarding the dates that Plaintiffs had purchased their shares of Resource Capital stock.  In addition, Plaintiffs' counsel noted that the November 10, 2016 Letter provided no information regarding any actions that the Company intended to take regarding the Demand, and requested additional information regarding the person or persons who would be evaluating the Demand.  A true and correct copy of the December 12, 2016 Letter is attached hereto as Exhibit C.

145. In response to the December 12, 2016 Letter, Plaintiffs' counsel received a letter dated December 16, 2016 (the "December 16, 2016 Letter"), from Ms. Weisbaum, stating only that the Company's Board "has appointed an independent Demand Evaluation Committee who is in the process of evaluating the substance of your November 4, 2016 letter. When the work of the independent Demand Evaluation Committee is completed, it will issue a report which Resource Capital Corp. will share with you." The December 16, 2016 Letter contained no additional information regarding the persons appointed to the Demand Evaluation Committee, the mandate of the Demand Evaluation Committee, or the estimated timing of the completion of the investigation. A true and correct copy of the December 16, 2016 Letter is attached hereto as Exhibit D.

146. On January 25, 2017, Plaintiffs' counsel responded by letter (the "January 25, 2017 Letter") to Ms. Weisbaum and requested additional information regarding: the persons appointed to the Demand Evaluation Committee and the dates they were appointed; the process used to select members of the committee and to determine that each member is disinterested and independent; and the scope of the mandate of the Demand Evaluation Committee. In addition, Plaintiffs' counsel requested that the Demand Evaluation Committee's investigation include the allegations and claims made in three shareholder derivative actions filed on behalf of the Company in this Court. A true and correct copy of the January 25, 2017 Letter is attached hereto as Exhibit E.

147. Plaintiffs' counsel then received a letter dated March 10, 2017, from Mr. Joshua Horn of the law firm Fox Rothschild LLP (the "March 10, 2017 Letter"). The March 10, 2017 Letter states that Fox Rothschild LLP represents the Company and that Mr. Horn was writing in response to Plaintiffs' November 4, 2016 Demand. The March 10, 2017 Letter states that the

Company appointed a Demand Evaluation Committee "to examine the claims of [Plaintiffs] among others." The March 10, 2017 Letter enclosed the Demand Evaluation Committee's February 28, 2017 letter to Mr. Horn ("February 28, 2017 Letter") "regarding a shareholder demand that is nearly identical to the one [Plaintiffs] have made." A true and correct copy of the March 10, 2017 Letter, including the February 28, 2017 Letter enclosed therewith, is attached hereto as Exhibit F.

148. The February 28, 2017 Letter was written in response to a request from Mr. Horn to the Demand Evaluation Committee to provide a summary of the reasons why the Demand Evaluation Committee recommended to the Company's Board that the claims asserted by Mr. Mark McKinney in an October 31, 2015 demand ("McKinney Demand") "lack factual or legal merit, and why it would not be in the best interest of RCC to pursue those claims." On February 7, 2017, according to the February 28, 2017 Letter, the Board voted unanimously to "accept the recommendation of the [Demand Evaluation Committee] not to pursue the claims alleged in the McKinney Demand."

149. The March 10, 2017 Letter claims that the February 28, 2017 Letter "addresses all of the material allegations contained in [Plaintiffs' Demand] letter." Thus, the March 10, 2017 Letter and February 28, 2017 Letter, collectively, constitute a *de facto* refusal of Plaintiffs' Demand for the Board to investigate and take action to address the misconduct identified in Plaintiffs' Demand and herein.

150. The Board's refusal of Plaintiffs' Demand was both unreasonable and uninformed. The February 28, 2017 Letter, on which the Board based its refusal of Plaintiffs' Demand, indicates that the Demand Evaluation Committee failed to investigate the improper statements discussed herein. Indeed, the February 28, 2017 Letter admits that the scope of the

Demand Evaluation Committee's investigation was limited to only two issues raised in the McKinney Demand: "the adequacy of [the Company's] internal controls in the areas of financial reporting and investment monitoring; and the timing of the decision to write off the Loan Position." Thus, based on this limited scope, the Demand Evaluation Committee failed to investigate, as Plaintiffs demanded, whether the Company's officers and directors breached their fiduciary duties to the Company by issuing or causing to issue false and misleading statements on behalf of the Company. Indeed, Plaintiffs' Demand specifically required "a full investigation of the allegations" contained in the February 12, 2016 Amended Complaint filed in the Related Securities Class Action. Accordingly, the Demand Evaluation Committee and the Board did not act on the basis of all reasonably available information and ignored Plaintiffs' specific demand to investigate the false and misleading statements alleged herein.

151. The February 28, 2017 Letter also lacks key information regarding the Demand Evaluation Committee's process, reasoning, and conclusions in conducting its investigation. For example, the February 28, 2017 Letter is only a summary of the reasons behind the Demand Evaluation Committee's recommendations to the Board regarding the issues raised *in the McKinney Demand*—the February 28, 2017 Letter refers to the existence of a February 27, 2017 presentation of a "Report" to the Board by the Demand Evaluation Committee, but this "Report" has not been provided to Plaintiffs. The February 28, 2017 Letter also states that the Demand Evaluation Committee interviewed ten witnesses, but does not identify those witnesses. Instead, the February 28, 2017 Letter generically describes the ten witnesses to include "not only directors and officers but also [the Company's] Director of Internal Audit, and the [C]ompany's external auditor, Grant Thornton LLP." Plaintiffs' Demand identified *fourteen* directors and officers for the Company to investigate; considering the Demand Evaluation Committee only

- 46 -

interviewed *ten* witnesses, the February 28, 2017 Letter on its face demonstrates the Demand Evaluation Committee failed to interview witnesses with information material to Plaintiffs' Demand. Finally, the February 28, 2017 Letter fails to weigh the potential recovery from any lawsuit in a way that would allow the Board to compare a lawsuit to the costs, and fails to consider the specific merits of bringing suit against any of the individual officers and directors identified in Plaintiffs' Demand.

152.    The limited nature of the Demand Evaluation Committee's investigation is unsurprising in light of the bias of the Defendants leading it: Defendants Levin, Fore, and Ickowicz. All three were identified in Plaintiffs' Demand as directors that appeared to have breached their fiduciary duties to the Company by issuing false and misleading statements on behalf of the Company and/or completely failing to discharge their designated duties and responsibilities. Indeed, Defendants Levin and Ickowicz signed the Company's 2012, 2013, and 2014 Form 10-K's which, as alleged herein, contained materially false or misleading information regarding the quality and effectiveness of the Company's internal controls and the completeness of the Company's disclosures.

153.    In addition, Defendants Fore and Ickowicz were both members of the Company's Investment Committee during the class period of October 31, 2012 to August 5, 2015 as alleged in the Securities Class Action. Fore was a member of the Company's Investment Committee from at least April 2014 to April 2016. Ickowicz was a member of the Company's Investment Committee from at least April 2012 to April 2016. The Company's Investment Committee is charged with reviewing and considering the Company's proposed investments, and held twenty meetings during fiscal 2015. As such, as members of the Investment Committee, Defendants Fore and Ickwicz must have known that the Company's public statements concerning its

investments were false and misleading, and were therefore incapable of conducting a disinterested investigation into Plaintiffs' Demand.

154. The February 28, 2017 Letter also states: "Pursuing the breach of fiduciary duty claims alleged by Mr. McKinney would severely prejudice [the Company's] ability to defend [the Related Securities Action] because the company would effectively be required to admit many of the allegations of wrongdoing alleged in the [Related Securities Action]."  However, the mere existence of pending class action lawsuits is not a sufficient reason to forfeit the Company's rights of action against errant officers and directors.

155. Finally, the March 10, 2017 Letter and February 28, 2017 Letter do not state whether the Demand Evaluation Committee engaged independent counsel to guide its deliberations and to advise it regarding Plaintiffs' Demand.  Although the February 28, 2017 Letter is addressed to Mr. Horn of the law firm Fox Rothschild LLP, the March 10, 2017 Letter from Mr. Horn to counsel for Plaintiffs states that Fox Rothschild LLP represents the Company itself.

156. The Board's actions in response to Plaintiffs' Demand demonstrate the Board's desire to achieve one predetermined result—a refusal of the demand.  The Board deferred the investigation of Plaintiffs' Demand to conflicted Demand Evaluation Committee members who would make the recommendation the Board wanted—a refusal of the Demand.  The Demand Evaluation Committee failed to act independently in determining that Plaintiffs' Demand should be rejected.  The Review Committee was comprised of the same individuals that were implicated in the wrongdoing.  Defendants Fore, Ickowicz, and Levin reviewed, approved, and/or signed statements that contained the improper representations alleged herein.

157. Similarly, the directors who ultimately rejected Plaintiffs' Demand are also implicated in the wrongdoing complained of herein for their role in allowing misleading statements and filings to be issued and disseminated, and by allowing omissions to remain undisclosed, as alleged herein. At the time this action was commenced, the Board of Resource Capital consisted of the following ten (10) directors: Kessler, Beach, Fore, Hart, Ickowicz, Levin, Neff, and Wiggins, and non-defendants Jeffrey Cohen and Farkas. The Director Defendants face a substantial likelihood of liability for their individual misconduct. The Director Defendants were directors during the Relevant Period, and as such had a fiduciary duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company concerning its financial and business prospects were accurate.

158. The Board's effective refusal of the Demand is unreasonable and the Individual Defendants have failed to conduct a reasonable inquiry and failed to act in good faith, on an informed basis, or in the honest belief that the refusal was in the best interest of the Company. Therefore, Plaintiffs reasonably believe that the Board's refusal is not a valid exercise of business judgment.

159. Resource Capital has been and will continue to be exposed to significant losses due to the Individual Defendants' wrongdoing. Yet, the Director Defendants have not filed any lawsuits against any persons who were responsible for the wrongful conduct. Thus, the Director Defendants continue to breach their fiduciary duties to the Company and face a sufficiently substantial likelihood of liability for their breaches.

160. If Resource Capital's current officers and directors are protected against personal liability for their breaches of fiduciary duties alleged in this Complaint by Directors & Officers Liability Insurance ("D&O Insurance"), they caused the Company to purchase that insurance for

their protection with corporate funds, i.e., monies belonging to the shareholders. However, Plaintiffs reasonably believe that the D&O Insurance policies covering the Individual Defendants in this case contain provisions that eliminate coverage for any action brought directly by Resource Capital against the Individual Defendants, known as the "insured versus insured exclusion."

161. As a result, if the Director Defendants were to sue themselves or certain of the officers of Resource Capital, there would be no D&O Insurance protection, and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. Therefore, the Director Defendants cannot be expected to file the claims asserted in this derivative lawsuit because such claims would not be covered under the Company's D&O Insurance policy.

162. Plaintiffs have not made any demand on shareholders of Resource Capital to institute this action since such demand would be a futile and useless act for the following reasons:

(a) Resource Capital is a publicly traded company with thousands of shareholders of record and at least hundreds of thousands of beneficial owners;

(b) Making demand on such a number of shareholders would be impossible for Plaintiffs, who have no means of collecting the names, addresses, or phone numbers of Resource Capital shareholders; and

(c) Making demand on all shareholders would force Plaintiffs to incur excessive expenses and obstacles, assuming all shareholders could even be individually identified with any degree of certainty.

- 50 -

163. Given the Board's unreasonable refusal of Plaintiffs' lawful demand to sufficiently investigate the misconduct and/or to take sufficient action to remedy the harms caused to the Company, Plaintiffs now file this Complaint.

## COUNT I

**Against Defendants Kessler, Beach, E. Cohen, Jonathan Cohen, Fore, Hart, Ickowicz, Levin, Neff, and Wiggins for Violations of Section 14(a) of The Securities Exchange Act of 1934**

164. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

165. Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

166. The Company's 2014 and 2015 Proxy Statements violated Section 14(a) and Rule 14a-9 by misrepresenting or failing to disclose: (i) risks related to the Mezzanine Loan, including the Company's increasing exposure to Puerto Rico's ongoing economic decline; (ii) the true quality and performance of the Company's loans; (iii) deficiencies in Resource Capital's internal controls; and (iv) that as a result of the foregoing, Resource Capital's public statements were materially false and misleading at all relevant times.

167. In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose these material facts, the statements contained in these Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiffs in voting on the matters set forth for shareholder

- 51 -

determination in the Proxy Statements, including but not limited to, election of directors, approval of officer compensation, and appointment of independent auditor.

168.    The Company was damaged as a result of Defendants' material misrepresentations and omissions in the Proxy Statements.

## COUNT II

### Against the Individual Defendants for Breach of Fiduciary Duties

169.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

170.    The Individual Defendants owed and owe Resource Capital fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Resource Capital the highest obligation of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight, and supervision.

171.    The Individual Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight, and supervision.

172.    The Individual Defendants each knowingly, recklessly, or negligently: (i) made false or misleading statements that misrepresented or failed to disclose material information concerning the Company; (ii) approved the issuance of such false and/or misleading statements; (iii) failed to take actions to correct such false and/or misleading statements after they had been disseminated by the Company; (iv) failed to act independently and with due care in rejecting the Demand; and/or (v) failed to address the misconduct.  These actions were not a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

173.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Resource Capital has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

- 52 -

174.    Plaintiffs, on behalf of Resource Capital, have no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

175.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

176.    By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Resource Capital.

177.    The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Resource Capital.

178.    Plaintiffs, as shareholders and representatives of Resource Capital, seek restitution from Defendants and seek an order from this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct and fiduciary breaches.

179.    Plaintiffs, on behalf of Resource Capital, have no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Waste of Corporate Assets

180.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

181.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted in continuous, connected, and ongoing harm to the Company.

182.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (ii) awarding self-interested stock options to certain

officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

183.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

184.    Plaintiffs, on behalf of Resource Capital, have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.    Against all Individual Defendants for the amount of damages sustained by the Company as a result of the Individual Defendants' violations of federal law, breaches of fiduciary duties, unjust enrichment, and waste of corporate assets;

B.    Directing Resource Capital to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Resource Capital and its shareholders from a repeat of the damaging events described herein, including but not limited to putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation, and taking such other action as may be necessary to place before shareholders for a vote the following corporate governance proposals or policies:

- a proposal to strengthen the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- a proposal to strengthen the Company's internal reporting and financial disclosure controls;

- a provision to permit shareholders of Resource Capital to nominate at least three candidates for election to the Board to replace existing directors;

- a proposal to develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

- a proposal to ensure the accuracy of the qualifications of Resource Capital's directors, executives and other employees;

- a proposal to strengthen the Company's procedures for the receipt, retention, and treatment of complaints received by the Company regarding internal controls; and

- a provision to appropriately test and then strengthen the Company's internal operational control functions;

C.      Awarding to Resource Capital restitution from the Individual Defendants, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Individual Defendants;

D.      Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury.

DATED: March 17, 2017                      JOHNSON & WEAVER, LLP


                                           *s/ W. Scott Holleman*
                                           W. SCOTT HOLLEMAN

                                           99 Madison Avenue, 5th Floor
                                           New York, NY 10016
                                           Telephone: 212-802-1486
                                           Facsimile: 212-602-1592
                                           ScottH@johnsonandweaver.com

                                           JOHNSON & WEAVER, LLP
                                           FRANK J. JOHNSON
                                           600 West Broadway, Suite 1540
                                           San Diego, CA  92101
                                           Telephone: 619-230-0063
                                           Facsimile: 619-255-1856
                                           FrankJ@johnsonandweaver.com

JOHNSON & WEAVER, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone: 770-200-3104
Facsimile: 770-200-3101
MichaelF@johnsonandweaver.com

*Attorneys for Plaintiffs*
*Dave Sherek and Robert H. Spiegel*